IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEPHENS, et al. | : | NO. 04-3642 |

MEMORANDUM

**Baylson, J.**                                                                                                                   September 27, 2005

## I.   Introduction

Plaintiff Great American Insurance Company ("GAIC") filed this breach of contract action against Defendants Charles H. Stephens, Floy Stephens, Gary L. Bennett, and Kay Bennett ("Defendants") on August 2, 2004.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 due to the diversity of citizenship of the parties.

In a Memorandum and Order dated February 25, 2005, the Court denied Defendants' Motions to Dismiss, and granted Defendants' Motion Pursuant to Rule 56(f), which requested that Plaintiff's Motion for Summary Judgment be denied on the grounds that it was premature, or in the alternative, that the Court continue Plaintiff's Motion for Summary Judgment so that Defendants might obtain affidavits, depositions, and other discovery necessary to Defendants' opposition to the motion.  The Court continued Plaintiff's Motion for Summary Judgment. Great American Ins. Co. v. Stephens, 2005 WL 452349 (E.D. Pa. 2005).

Presently before the Court therefore are: (1) Plaintiff's Motion for Summary Judgment, and (2) Floy Stephen's Motion to Amend/Correct Affirmative Defenses in Light of Evidence Developed During Discovery.

## II. Background

The Court's Memorandum and Order of February 25, 2005, describes the allegations in GAIC's complaint in detail. GAIC's arguments for summary judgment, set forth below, rely on Paragraphs 3, 4, and 10 of the Agreement of Indemnity executed between Plaintiff and Defendants on February 26, 2001 (the "Indemnity Agreement"), which provides the following:

> 3. That the Principal and Indemnitor will perform all the obligations of any such bond or bonds and will at all times indemnify and keep indemnified the Surety from and against any and all liability loss, cost, damages, expenses, counsel and attorneys' fees, claims, demands, suits, judgments, orders and adjudications that the Surety shall or may for any cause at any time sustain, incur or become subject to by reason of executing any such bond or bonds.
>
> 4. That the Principal and Indemnitor's liability hereunder shall . . . extend to and include all costs, expenses, counsel and attorneys' fees incurred or sustained by the Surety in making any investigation on account of any such bond or bonds, in prosecuting or defending any action brought in connection therewith, in obtaining or seeking to obtain a release therefrom and in enforcing any of the agreements herein contained.
>
> 10. That the Surety shall have the right to pay, adjust, settle or compromise any liability, loss, costs, expenses, counsel and attorneys' fees, claims, demands, suits, judgments, orders and adjudications upon or under such bond or bonds and in such event an itemized statement thereof, sworn to by an officer or officers of the Surety, or the voucher or vouchers or other evidence of such payment, adjustment, settlement, or compromise, shall be conclusive evidence of the fact and extent of the liability of the Indemnitor hereunder, provided such payment, adjustment, settlement, or compromise shall have been made by the Surety in good faith, believing itself liable therefor, whether liable or not.

Agreement of Indemnity, ¶¶ 3, 4, 10.

## III. GAIC's Motion for Summary Judgment

### A. Parties' Contentions

GAIC's Motion for Summary Judgment argues that, because Defendants admit that they executed the Indemnity Agreement, and do not contest the fact that GAIC made a settlement payment to Norwood, these undisputed facts constitute the "conclusive evidence of the fact and

-2-

extent of the liability of the Indemnitor[s] hereunder, provided such payment . . . shall have been made by the Surety in good faith," provided for in Paragraph 10 of the Indemnity Agreement. Even if this "conclusive evidence" were to be considered only to make prima facie case for Defendants' liability, argues GAIC, the burden would then shift to Defendants to prove that the costs incurred were not recoverable, and Defendants have presented no evidence to dispute that GAIC is entitled to indemnification for all losses sustained under the Performance Bond. GAIC settled the Performance Bond Litigation and made the payment to Norwood after the panel of arbitrators found in Norwood's favor, and judgment has been entered in favor of Norwood and against Bennett Composites, Inc. ("BCI") in an amount greater that the penal sum of the Performance Bond which GAIC paid to Norwood. Therefore, according to GAIC, no material facts remain in dispute regarding Defendants' liability, and GAIC is entitled to recover the following from Defendants: the $391,827.00 paid to Norwood, plus the cost of the irrevocable letter of credit in the sum of $6,177.32, and consultant's and attorneys' fees incurred by GAIC as a result of providing the Performance Bond, which GAIC calculates as a total loss of $549,512.75 through September 30, 2004. GAIC therefore requests judgment against Defendants, jointly and severally, in the sum of $549,512.75 plus interest, cost and attorneys' fees.

Defendants' Brief in Opposition to Plaintiff's Motion[1] argues that the Indemnity Agreement unambiguously states that it applies only to bonds executed <u>after</u> the execution of the Indemnity Agreement. In support of this contention, Defendants quote from Paragraph 1 of the

---

[1]Defendants argue that, should a conflict of laws arise, Pennsylvania choice of law rules would require that Alabama law be applied. Defendants concur, however, in Plaintiff's assessment that Alabama law regarding the enforcement of indemnity agreements is in accord with the majority of jurisdictions. (Brief in Opposition, p. 10, n. 3). As will be seen below, no conflict of laws arises in this case, so the choice of law issue need not be addressed.

Indemnity Agreement:

> 1.      That all the terms, provisions, conditions and agreements herein contained shall be binding and obligatory upon the Principal and Indemnitor with respect to any such bond or bonds hereafter executed by the Surety for the Principal, which bond or bonds shall be deemed to have been executed by the Surety at the request, in each instance, of the Principal and the Indemnitor . . .

Defendants argue that the bond relating to the 935 Project (the "Performance Bond"), for which Plaintiff seeks indemnity, was executed on February 23, 2001, prior to the Indemnity Agreement, which was executed on February 26, 2001, and that the Performance Bond is therefore not covered by the Indemnity Agreement.[2]

Defendants argue that the contractual language relied on by GAIC to suggest that the Indemnity Agreement applies to bonds issued before the execution of the Indemnity Agreement is drawn from the recital clause of the Indemnity Agreement which Defendants argue should not control or extend the operative clauses of a contract unless those clauses are ambiguous. According to Defendants, the operative terms of the Indemnity Agreement are clear that the Agreement only covers bonds executed after the execution of the Indemnity Agreement on February 26, 2001. Defendants also assert that the "re-execution" of the Performance Bond on February 26, 2001, did not create a "new" bond, as both sets of documents carried the identical number, referenced the same contract, and designated the same parties as principal (BCI), surety (GAIC), and obligee (Norwood). According to Defendants, GAIC failed to insert language into the Indemnity Agreement that would have made it apply to the Performance Bond and the explanation for this is GAIC's haste to get the bond written, which led to procedural errors and

---

[2]Defendants' Brief in Opposition argues that the date of the execution of the bond is the only pertinent date for their argument, but that, if the date of delivery were considered pertinent, there is a genuine issue of material fact as to the date of delivery of the bond. (Brief in Opposition, pp. 17-19). As the discussion in the following text demonstrates, however, the date of delivery of the bond is immaterial to the disposition of this motion.

failure in the underwriting process. (Brief in Opposition, p. 23).

Defendants also argue that, even if the Indemnity Agreement is found to apply to the Performance Bond, Defendants are not liable because GAIC acted in bad faith in settling with Norwood.  Specifically, Defendants argue that GAIC breached its duty of good faith by paying an amount to Norwood that was unreasonable under the circumstances.  Defendants argue that GAIC failed to pursue "substantial defenses" available to GAIC, such as that Norwood and BCI concealed the status of the bonded subcontract when the Performance Bond was executed, which constituted fraud.  (Brief in Opposition, p. 26-27).  According to Defendants, at the time of the execution and issuance of the Performance Bond, disputes had already arisen between BCI and Norwood as to BCI's performance, and neither BCI nor Norwood revealed this to Hutto, GAIC's agent.  Defendants contend that pursuit of this defense could have constituted a complete defense for GAIC to any liability arising under the Performance Bond, or that GAIC should have at least sought a reduction in the settlement on the basis of the existence of this defense.  Defendants contend that GAIC did not pursue this defense out of self-interest, because to do so would have shed light on the deficiencies in the underwriting process alleged by Defendants.

Another defense Defendants argue was available to GAIC was overpayment. According to Defendants, Norwood had acknowledged, by its payments to BCI, that at least $330,000 of the subcontract had been performed, leaving a balance of $50,000 to complete the subcontract.  The arbitration award of over $500,000, argue Defendants, must therefore include premature payments or award extra-contractual damages, and any payments made to BCI in excess of those specified for work performed should have discharged GAIC's liability by a corresponding amount.  Defendants argue that GAIC's failure to negotiate a reduction in the bond penalty on this basis is evidence that GAIC settled in bad faith.  Defendants also argue that GAIC's bad

faith is evidenced by the settlement payment to Norwood being in excess of the bond penalty.

In its Reply to Defendants' Opposition, GAIC argues Defendants' contention that the Indemnity Agreement applies only to bonds executed before the execution of the Indemnity Agreement is based on an incomplete and misleading quotation of the Indemnity Agreement's provisions. GAIC argues that the Indemnity Agreement by its express terms applies to bonds executed <u>before and after</u> the execution of the Indemnity Agreement, and that, regardless, the Performance Bond at issue here was undisputedly executed <u>after</u> the execution of the Indemnity Agreement, as the Performance Bond was executed the afternoon of February 26, 2001, after GAIC had received the Indemnity Agreement from Defendants.

GAIC also argues that Defendants' bad faith argument must fail because GAIC had the right to settle with Norwood using its own discretion under the Indemnity Agreement, and such agreements are enforced by the courts in the absence of proof of dishonesty or ill motive on the part of the surety. GAIC contends that Defendants' arguments that GAIC's failure to pursue a concealment or overpayment defense constitutes bad faith are not based on admissible evidence in the record, and regardless, do not rise to the level of bad faith necessary to defeat GAIC's motion for summary judgment.

GAIC therefore requests that the Court grant summary judgment in favor of GAIC and award $398,004.32 for GAIC's payments to Norwood, plus consultant's and attorneys' fees and expenses in the amount of $206,322.68, plus interest at the legal rate of 6% amounting to $44,468.91 through June 15, 2005, plus $40,262.86 for approved but unpaid attorneys' invoices, for a total of $689,058.77 plus per diem interest on all payments from June 15, 2005, at the rate of $99.37, and for costs, expenses and attorneys' fees paid by GAIC after June 15, 2005, in an amount to be determined upon submission of supplemental affidavits.

Defendant Floy Stephens ("Floy") has filed a separate Brief in Opposition and Supplemental Brief in Opposition to GAIC's Motion for Summary Judgment.[3] Floy incorporates the arguments of her fellow Defendants and further argues that summary judgment is improper against her because she alleges that she did not sign the Indemnity Agreement nor did she provide explicit authority for the Agreement to be executed on her behalf.[4] According to Floy, the signature on the Indemnity Agreement purported to be hers was in fact placed on the Indemnity Agreement by a temporary employee of her husband, Defendant Charles Stephens, as testified to by Mr. Stephens and Mr. Bennett. Floy alleges that she does not recall giving any authorization for the execution of the Indemnity Agreement on her behalf, and that she did not provide any written authority to do so, which she contends is required to execute a surety agreement on someone's behalf pursuant to Alabama's statute of frauds. Floy also argues that the fact that her signature was not notarized serves as proof of the invalidity of her signature. As this issue is also raised by Floy's Motion for Leave to Amend Affirmative Defenses, Floy's arguments regarding the execution of the Indemnity Agreement will be discussed below in conjunction with the disposition of that motion.

**B.    Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[3] The Supplemental Brief was filed by Floy in order to incorporate deposition citations that were not in her original Brief in Opposition. The Briefs are identical in all other respects.

[4] It should be noted that Floy did not make this assertion previously in relation to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, at which time the fact that Floy Stephens and Kay Bennett were signatories of the Indemnity Agreement was undisputed. Great American Ins. Co. v. Stephens, 2005 WL 452349 at *2-6.

matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249.

"[S]ummary judgment is an appropriate method of resolving disputes concerning indemnification agreements." United States Fidelity and Guaranty Co. v. Feibus, 15 F.Supp.2d 579, 581 (M.D. Pa. 1998)(listing cases).

### C.  Discussion

As mentioned above, Defendants' Opposition to Plaintiff's Motion relies on an excerpt from Paragraph 1 of the Indemnity Agreement to contend that the Agreement applies only to bonds executed <u>after</u> the execution of the Indemnity Agreement:

> 1.  That all the terms, provisions, conditions and agreements herein contained shall be binding and obligatory upon the Principal and Indemnitor with respect to any such bond or bonds hereafter executed by the Surety for the Principal, which bond or bonds shall be deemed to have been executed by the Surety at the request, in each instance, of the Principal and the Indemnitor . . .

GAIC argues that this excerpt from the Indemnity Agreement omits other language in the Agreement which makes it clear that the Agreement also applies to bonds which the surety has executed <u>before</u> the execution of the Indemnity Agreement, if those bonds were executed with the express understanding that the Agreement would be given. Specifically, GAIC points to the WHEREAS clause prior to Paragraph 1, which states the following:

> WHEREAS, at the request of the Principal and Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety <u>has executed</u> or procured to be executed, and may from time to time hereafter procure to be executed, said Bonds on behalf of the Principal;

Indemnity Agreement, ¶1 (emphasis added). GAIC therefore argues that, read in the context of the entirety of the Agreement, the reference to "any such bond or bonds hereafter executed by the Surety for the Principal" in Paragraph 1 does not exclude a bond which was executed with the express understanding that the Indemnity Agreement would be given, as was the Performance Bond at issue here, whether or not that bond was executed before or after the execution of the Indemnity Agreement.

Defendants argue that the operative language of Paragraph 1 unambiguously limits the application of the Indemnity Agreement to bonds executed <u>after</u> the execution of the Indemnity Agreement, and that therefore the language of Paragraph 1 should prevail over the language in the WHEREAS clause cited by GAIC. (Defendant's Brief in Opposition, p. 20). Defendants cite to cases in which courts have held that, where the recital provisions and the operative provisions of a contract conflict, the operative provisions, unless ambiguous, should control. <u>See, e.g.</u> <u>Nelson Dairies Inc. v. Royal</u>, 1956 WL 8287 (Pa. Com. Pl. 1956).

However, general rules of contract construction advise against making any provisions of an agreement meaningless or superfluous, if the terms can be reconciled to avoid such an outcome. <u>Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 96 (3d Cir. 2001). Here, by interpreting the reference to "such bond or bonds" to include the bonds "the Surety has executed" "upon the express understanding that this Agreement of Indemnity should be given," as identified in the WHEREAS clause, the provisions of the WHEREAS clause can be reconciled with the provisions of Paragraph 1. If the Court were to adopt the interpretation of the Indemnity Agreement suggested by Defendants, the WHEREAS clause would "become meaningless, which would violate the well-established principle of contract construction 'that a contract should be read so as to give meaning to all of its terms when read as an entirety.'" <u>Id.</u>

(quoting <u>Contrans, Inc. v. Ryder Truck Rental, Inc.</u>, 836 F.2d 163, 169 (3d Cir.1987)).

Reading the Indemnity Agreement "as an entirety," it becomes clear that Paragraph 1's reference to "bonds hereafter executed by the Surety" is in the context of extending the coverage of the Indemnity Agreement to any bonds executed after the execution of the Agreement and <u>before</u> the revocation of the Agreement by the Indemnitor, the procedure for which is set forth in the text of Paragraph 1 which, in its entirety, reads:

> 1. That all the terms, provisions, conditions and agreements herein contained shall be binding and obligatory upon the Principal and Indemnitor with respect to any such bond or bonds hereafter executed by the Surety for the Principal, which bond or bonds shall be deemed to have been executed by the Surety at the request, in each instance, of the Principal and the Indemnitor, this agreement to extend from the date thereof and until receipt by the Surety of written notice by registered mail, addressed to the Bonding Department of the Surety at its home office at 580 Walnut Street, Cincinnati, Ohio 45202, revoking this agreement of indemnity, the Indemnitor to have no liability under this agreement with respect to bonds executed by the Surety for the Principal after the actual receipt of such notice but to be bound under this agreement with respect to bonds executed before the actual receipt of such notice.

Therefore, while Paragraph 1, read in isolation, might seem to limit the Indemnity Agreement's coverage to bonds "hereafter executed," in the context of the Agreement in its entirety, Paragraph 1 is extending the Agreement's coverage of bonds "hereafter executed" from the time period beginning with the execution of the Agreement and ending with the receipt of notice of the Agreement's revocation, but is not excluding the Agreement's previous statement that it applies to bonds "the Surety has executed," when those bonds were executed "upon the express understanding that this Agreement of Indemnity should be given."

Therefore, although Defendants attempt to create an issue of fact by disputing the exact timing of the execution and delivery of the Performance Bond in relation to the execution of the Indemnity Agreement, this factual dispute is immaterial. Whether or not the performance bonds

at issue here were executed prior to or after the Indemnity Agreement, the Indemnity Agreement applies to bonds, such as the Performance Bond, entered into upon the express understanding that the Agreement of Indemnity would be given.

Turning to Defendants' argument that GAIC acted in bad faith in settling Norwood's claims, the Third Circuit has held, in a case involving liability for attorneys' fees under an indemnity agreement, that "what an indemnitor must demonstrate to escape liability . . . depends upon the precise language used in the agreement." Fallon Elec. Co. v. Cinncinnati Ins. Co., 121 F.3d 125, 129 (3d Cir. 1997). Here, the Indemnity Agreement states that the Indemnitors shall be liable for settlements that "shall have been made by the Surety in good faith, believing itself liable therefor, whether liable or not." Indemnity Agreement, ¶10. Such good faith clauses are "typical in surety agreements and have routinely been upheld." Feibus, 15 F.Supp.2d at 585.

> Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry. The purpose of good faith clauses is to facilitate the handling of settlements by sureties and protect them from unnecessary and costly litigation. It is believed that the expense, delay, trouble, and risk of loss to the [surety] is a sufficient safeguard against an unwarranted payment.

Id. (citations and quotations omitted).

The Indemnity Agreement does not set forth a standard for good faith, and in such cases, the common law standard of "bad faith or fraudulent payment is the sole limiting factor of a surety's enforcement of an indemnity agreement." United States Fidelity and Guaranty Co. v. Bilt-Rite Contractors, Inc., 2005 WL 116374 *4 n.9 (E.D. Pa. May 16, 2005). Under this standard, bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . [b]ad faith requires a showing of recklessness or improper motive such as self-interest or ill will." Id. (quoting United

States Fidelity and Guaranty Co. v. Feibus, 15 F.Supp.2d 579, 585 (M.D. Pa. 1998)).

Alabama law, like most jurisdictions, including Pennsylvania, also requires that "where a surety has sufficiently demonstrated that it has made payments on bonds issued on behalf of its principal, the surety may recover those payments, interest, and expenses, including attorney's fees, as a matter of law." Frontier Inc. Co. v. International, Inc., 124 F.Supp.2d 1211, 1214 (N.D. Ala. 2000).  And, similarly to other jurisdictions, "indemnitors can defeat a surety's right to recover under indemnity provisions by demonstrating either fraud or lack of good faith on the part of the surety in discharging its obligations under the bond." Id. (citing Fidelity and Deposit Co. v. Briston Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983)).  Alabama law therefore fails to conflict with Pennsylvania law, as a showing of lack of good faith "carries an implication of dishonest purpose, a conscious doing of wrong, a breach of a duty through motives of self-interest or ill will." Id.  In both jurisdictions, "a lack of diligence or negligence is not the equivalent of bad faith, indeed even gross negligence cannot support a finding of bad faith." Id. (quoting Feibus, 15 F.Supp.2d at 585).

Defendants have not attempted to prove fraud on the part of GAIC and their arguments for GAIC's alleged lack of good faith in negotiating the settlement with Norwood rely on the GAIC's alleged failure to pursue two defenses Defendants allege were available to GAIC.  The Court finds, however, that these allegations, even if true, would not constitute a lack of good faith on the part of GAIC as a matter of law.  Even if the concealment defense alleged by Defendants did provide, as Defendants allege, a complete defense to GAIC's liability, both the express language of the Indemnity Agreement and the caselaw make it clear that "actual liability is not a prerequisite to a surety's right to reimbursement." Id. at 1215.  Moreover, Defendants have presented no evidence to suggest that GAIC was aware of the allegedly concealed default at

the time it settled with Norwood. As to the alleged overpayment defense, "the law is clear that alleged overpayment or negligent investigation of claims does not constitute bad faith in the suretyship context." Id. at 1214.

The Court therefore finds that the evidence in the record is insufficient to establish a genuine issue for trial that GAIC acted in bad faith in its payment to Norwood with respect to the Performance Bond. As Defendants have not disputed the validity of the Indemnity Agreement nor the documentation supporting the payments made to Norwood by GAIC, GAIC has established the requirements for recovery and there are no material fact issues for trial. Thus, the Court will grant summary judgment in favor of GAIC. To aid the Court in determining the proper amount of the judgment in favor of GAIC, GAIC shall file its calculations and accompanying proofs within ten days of this Order, and Defendants shall file their response within ten days thereafter.

**IV.     Floy Stephens' Motion for Leave to Amend Affirmative Defenses**

As mentioned above, Defendant Floy Stephens now asserts that she did not sign the Indemnity Agreement or provide explicit authority for the Agreement to be executed on her behalf. Instead, she alleges that the signature on the Indemnity Agreement purported to be hers was in fact placed on the Indemnity Agreement by a temporary employee of her husband, Defendant Charles Stephens. Floy alleges that she does not recall giving any authorization for the execution of the Indemnity Agreement on her behalf, and that she did not provide any written authority to do so, which she contends is required to execute a surety agreement on someone's behalf pursuant to Alabama's statute of frauds. Floy also argues that the fact that her signature was not notarized serves as proof of the invalidity of her signature.

Floy's Motion for Leave to Amend Affirmative Defenses in Light of Evidence

-13-

Developed During Discovery requests that the Court permit Floy to amend her affirmative defenses pursuant to Federal Rule of Civil Procedure 15 to include an affirmative defense based on the Alabama statute of frauds. Floy alleges that "during the depositions that were taken in this matter, a more thorough record was developed, and it became clear that Floy Stephens never provided authorization for her signature on the Agreement of Indemnity that is the subject of this litigation." (Brief in Support of Motion for Leave to Amend, p. 1).

Paragraph 5 of GAIC's Complaint states: "In consideration for and as a precondition of GAIC issuing surety bonds to Bennett Composites, Inc. ("Bennett"), on or about February 26, 2001, the Indemnitors executed an Agreement of Indemnity ("Indemnity Agreement") in favor of GAIC, a copy of which is annexed hereto as Exhibit A." In her Answer to Paragraph 5 of the Complaint, Floy stated: "It is admitted that an Agreement of Indemnity was executed; as a writing it speaks for itself." She did not deny, as she now argues, that she did not provide authorization for her signature on the Indemnity Agreement or that it was unenforceable against her interests. Neither did she protest her status as a signatory of the Indemnity Agreement in her Motion to Dismiss for Lack of Personal Jurisdiction, which was denied by the Court primarily on the basis of her undisputed status as a signatory. Great American Ins. Co. v. Stephens, 2005 WL 452349 at *2.

Floy requests that the Court exercise its discretion to amend her affirmative defenses pursuant to Federal Rule of Civil Procedure 15, which provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Third Circuit has stated that "[a]mendments, although liberally granted, rest within the sound discretion of the trial court." Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir.1983). When denying a motion to amend, a district

-14-

court must set forth the grounds justifying such a denial, and the Third Circuit has held that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, the Court concludes that justice does not require the granting of Floy's Motion to Amend. Despite her protestations to the contrary, all the facts upon which Floy bases her motion were available to her from the outset of the case. The Court finds that Floy's delay in raising this issue was undue and her requested amendment would be prejudicial to GAIC. Therefore, the Court will deny her motion to amend. Her opposition to GAIC's Motion for Summary Judgment therefore also fails.

## VI.     Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of GAIC and denies Defendant Floy Stephens' Motion for Leave to Amend.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEPHENS, et al. | : | No.    04-3642 |

### ORDER

AND NOW this 27th day of September, 2005, upon consideration of the Motion for Summary Judgment of Plaintiff Great American Insurance Company (Docket No. 12), and the response thereto, it is ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED.

Defendant Floy Stephens' Motion for Leave to Amend Affirmative Defenses (Docket No. 36) is DENIED.

It is further ORDERED that Plaintiff shall file its calculations and accompanying proofs as to the form and amount of the judgment to be entered within ten (10) days of this Order. Defendants shall file their response within ten (10) days thereafter.

BY THE COURT:

  s/Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\CIVIL\04-3642,Great American v. Stephens\Great American Ins. Co. v. Stephens Summary Judgment.wpd